UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

MICHAEL DANZI a/k/a MICHAEL J. DANZI,

              Debtor,
-------------------------------------------------------------X
STANLEY HYMAN,

              Plaintiff

    -against-

MICHAEL DANZI,

              Defendant.
-------------------------------------------------------------X

Case No. 09-77669-dte

Chapter 7

Adv. Pro. No. 09-8613-dte

## MEMORANDUM DECISION AND ORDER

*Appearances:*

Harry I. Katz, P.C.
*Plaintiff's Counsel*
By: Harry I. Katz, Esq.
61-25 Utopia Parkway
Fresh Meadows, New York 11365

Steinberg, Fineo, Berger & Fischoff, P.C.
*Defendant's Counsel*
By: Douglas Thaler, Esq.
40 Crossways Park Drive
Woodbury, New York 11797

The Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

On December 29, 2009, Stanley Hyman (the "Plaintiff") commenced the instant adversary proceeding against Michael Danzi (the "Debtor" or the "Defendant"). The Complaint seeks to bar the Debtor's discharge under sections 523(a)(4) and (a)(6) with respect to the Debtor's debt to Plaintiff in the amount of $43,169.16. Additionally, the Complaint seeks to deny the Debtor's discharge in its entirety under section 727(a)(4). The Plaintiff filed a motion for summary judgment on May 19, 2010 seeking to deny the dischargeability of the debt owed to Plaintiff under sections 523(a)(4) and (a)(6). The Defendant filed a cross-motion for summary judgment on June 17, 2010. Oral arguments were heard before the Court on June 24, 2010 (the "Hearing), and the Court took the matter under submission.

This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is proper pursuant to 28 U.S.C. §1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(I), and (J).

## BACKGROUND:

The Plaintiff is a judgment creditor of the Debtor pursuant to a money judgment obtained in the state court on January 14, 2009 in the amount of $43,169.16 (the "Judgment"). The Plaintiff obtained the Judgment after pursuing the Debtor through several actions in the state courts. The nexus of the Judgment stems from the Plaintiff's purchase of a stolen vehicle from the Debtor's former corporation, The Captus Group ("Captus").

In May 2003 Captus, a car dealership, sold a 2000 Toyota Avalon (the "Vehicle") to the Plaintiff for $18,240.60. Defendant's papers indicate that he was the salesperson who sold the Vehicle to Plaintiff. (Defendant's Brief at 12). Nearly one year later, on April 20, 2004, the Suffolk County Police impounded the Vehicle because it was registered as stolen. Thereafter, on May 13, 2005 Plaintiff commenced litigation in state court against Captus for damages resulting

from the sale of the Vehicle to Plaintiff. On November 6, 2006 the Suffolk County Supreme Court granted summary judgment against Captus on the issue of liability, finding that the Vehicle was indeed a stolen vehicle when it was sold to the Plaintiff. (Plaintiff's Exhibit F). On April 19, 2007 an inquest as to damages was held, and on June 6, 2007 the Suffolk County Supreme Court entered a judgment against Captus in the amount of $37,269.75, representing damages, costs, disbursements and interest (Plaintiff's Exhibit H).

Plaintiff then moved to pierce the corporate veil against Captus and hold the Defendant personally liable for the debt. In his decision, Judge Farnetti stated:

> The Court is mindful that the testimony of Mr. Danzi at his deposition establishes that he had complete domination of the corporation. The testimony indicates that Mr. Danzi was at all times the sole person involved in the operation of CAPTUS. Further, it is undisputed that the vehicle CAPTUS sold to plaintiff was a stolen vehicle. As such, it appears that such domination by Mr. Danzi was used to commit a fraud or wrong against plaintiff which resulted in plaintiff's injury, thereby satisfying the two-prong test [that Plaintiff would have to meet in order to pierce the corporate veil].

(J. Farnetti's May 7, 2008 Order, Plaintiff's Exhibit J). However, Judge Farnetti denied the Plaintiff's motion to pierce the corporate veil against the Debtor. Since the Plaintiff alleged that the Defendant had fraudulently transferred $50,000.00 from Captus to himself in March 2004, Judge Farnetti noted that Plaintiff should commence a turnover proceeding against the Debtor pursuant to the "trust fund doctrine" in order to get a judgment against him personally.

On July 23, 2008 the Plaintiff commenced a cause of action against the Debtor seeking to recover the judgment owed by Captus. Judge Weiss in State Court issued an order dated October 16, 2008, which ordered the Debtor, acting as an officer of Captus, to pay the judgment amount, plus interest, to the Plaintiff. (Plaintiff's Exhibit L). The Order noted that there was no opposition filed. Judge Weiss' Order further provided that if the money was not paid by the

Debtor in his capacity as officer for Captus, then the Plaintiff would be entitled to receive a judgment against the Debtor personally. (Plaintiff's Exhibit L).

The Debtor subsequently failed to turn over the judgment amount. He made a motion to vacate the judgment on the grounds that opposition was filed, but due to law office failure, it was not considered by the court. The Debtor's motion was denied on December 22, 2008 on the grounds that law office failure was insufficient to constitute a reasonable excuse and that even if the papers were considered they did not provide a meritorious defense. (Plaintiff's Exhibit M). Thereafter, on January 14, 2009 the Plaintiff received a judgment against the Debtor personally. (Plaintiff's Exhibit A).

On October 9, 2009 the Debtor filed a Chapter 7 bankruptcy petition, and on December 29, 2009 the Plaintiff commenced the instant adversary proceeding. Both parties made motions for summary judgment, and after the Hearing the Court took the matter under submission.

## DISCUSSION:

Plaintiff seeks summary judgment with respect to his first two causes of action under sections 523(a)(4) and (a)(6) of the Bankruptcy Code ("Code") by applying the doctrines of collateral estoppel and res judicata. Defendant's cross-motion for summary judgment seeks dismissal of the Complaint on the grounds that the Complaint does not contain sufficient facts or elements to meet the requirements for denial of a discharge under sections 523(a)(4) or (a)(6).[1]

Pursuant to Bankruptcy Rule 7056, the Court may award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the record in the light

---

[1] Neither the Plaintiff nor the Defendant sought summary judgment with respect to the Plaintiff's Third Cause of Action under section 727(a)(4).

most favorable to the nonmoving party and resolve ambiguities in its favor.  *See Bell v. Rochester Gas & Elec. Corp*., 329 Fed. Appx. 304, 305 (2d Cir. N.Y. 2009).  This is particularly true when dealing with summary judgment motions seeking to deny a debtor a discharge since the goal of the Code is to provide a fresh start to the "'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (internal citations omitted); *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar),* 368 B.R. 120, 127 (Bankr. E.D.N.Y. 2007) ("Courts construe exceptions to discharge narrowly, and in favor of the debtor.").

1. Collateral Estoppel and Res Judicata

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999).  Under New York law the applicability of collateral estoppel depends on (1) whether the same issue was decided in the prior action and is decisive in the present action, and (2) whether the party opposing it had a full and fair opportunity to litigate the issue in the prior action.  *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 65 (2d Cir. N.Y. 2007); *Cohen v. Utica First Ins. Co*., 436 F. Supp. 2d 517, 523 (E.D.N.Y. 2006).  The moving party bears the burden of establishing that it should be applied.  *See New York v. Sokol* (*In re Sokol*), 113 F.3d 303, 306 (2d Cir. N.Y. 1997); *May Ship Repair Contracting Corp. v. Barge Columbia N.Y*., 160 F. Supp. 2d 594, 599 (S.D.N.Y. 2001).  Res judicata, or claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. N.Y. 1999) (*quoting Rivet v. Regions Bank*, 118 S. Ct. 921, 925 (U.S. 1998)).

2. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Code provides:

> (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> 
> …..
> 
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4) (2010).

The Plaintiff alleges that his debt is nondischargeable because the Debtor committed "fraud or defalcation while acting in a fiduciary capacity." In addition, the Court notes that the Complaint asserts that the Defendant's actions in paying himself $50,000.00 in March 2004 constituted embezzlement and larceny.

Under section 523(a)(4) a creditor must establish that the debtor was acting in a fiduciary capacity to the creditor at the time the debt arose, and that the debtor committed the fraud or defalcation in that capacity. *See The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999); *Nahman v. Jacks (In re Paul)*, 266 B.R. 728, 735 (B.A.P. 9th Cir. 2001) (noting that the creditor must establish that the debtor was a fiduciary to the creditor at the time the debt was created); *Race Place of Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 52 (Bankr. S.D.N.Y. 2001).

It falls to federal law, not state law, to determine whether a "fiduciary relationship" between the parties existed. *See In re Regan*, 477 F.3d 1209 (10th Cir. 2007); *In re Hayes*, 183 F.2d at 167. The more general definition of fiduciary, one that provides for "confidence, trust and good faith" does not apply for the purposes of section 523(a)(4). *Zohlman v. Zoldan*, 226 B.R. 767 (S.D.N.Y. 1998); *see Peerless Ins. Co. v. Casey (In re Casey)*, 181 B.R. 763 (Bankr. S.D.N.Y. 1995). Under federal law it is well settled that "fiduciary" is narrowly defined and applies to technical or express trusts. *See e.g., Lewis v. Short (In re Short)*, 818 F.2d 693 (9th

Cir. 1987); *Cashway v. Johnson (In re Johnson)*, 691 F.2d 249 (6th Cir. 1982); *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 14 (Bankr. S.D.N.Y. 2002). An express trust is created by a formal written agreement, while a technical trust may be created by state statute or common law doctrine that imposes a trust-like obligation on the debtor that brings him within the meaning of "fiduciary" under section 523(a)(6). *See In re Hayes*, 183 F.3d at 167 (stating that an express trust was one in which the "trustee" is a beneficial owner of a *res* held and managed for a named beneficiary); 4-523 Collier on Bankruptcy P 523.10[1][d]. The express or technical trust at issue "must exist prior to and independently of the wrongful conduct giving rise to the claim of non-dischargeable debt." *In re Dobrayel*, 287 B.R. at 14; *see Artis v. West (In re West)*, 339 B.R. 557, 566 (Bankr. E.D.N.Y. 2006); *Zohlman v. Zoldan*, 226 B.R. at 773.

Plaintiff's motion for summary judgment notes that in New York the officers and/or directors of a corporation act in a fiduciary capacity *to their corporation* and that there is "no question" that the Debtor "while acting in his capacity as an officer of Captus Group, Inc., was acting in a fiduciary capacity." (Plaintiff's Brief at 10) (emphasis added). However, there is no allegation in Plaintiff's papers as to what the fiduciary relationship was between Plaintiff and Defendant. A relationship must exist between the parties. For example, "in the Second Circuit an attorney is deemed to be acting in a fiduciary capacity in regard to his clients[;] corporate officers are deemed to be acting in a fiduciary capacity to the corporation[;] and partners have been held to stand in a fiduciary capacity with respect to one another." *In re West*, 339 B.R. at 567 (internal citations omitted). When the Court inquired at the Hearing about whether there was a fiduciary relationship between the Plaintiff and the Debtor, Plaintiff's counsel asserted that the fiduciary relationship between Plaintiff and Defendant was satisfied by the trust fund doctrine.

The trust fund doctrine provides that the officers and directors of an insolvent corporation are said to hold the remaining corporate assets in trust for the benefit of the corporation's general creditors. *See Econ. Dev. Growth Enters. Corp. v. McDermott (In re McDermott),* 2010 Bankr. LEXIS 1537, *7 (Bankr. N.D.N.Y. May 4, 2010) (declining to hold that the trust fund doctrine applied to section 523(a)(4) because it would "expand nondischargeability to any and all creditors with claims against the assets of insolvent corporations" which "runs contrary to the 'fresh start' policy underlying the Bankruptcy Code"); *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 549 (N.Y. 2000). Thus, "creditors of an insolvent corporation gain standing comparable to that of shareholders of a solvent corporation and can seek recovery from an officer or director based on a breach of his/her fiduciary duty." *In re McDermott*, 2010 Bankr. LEXIS 1537, *7. Plaintiff argues that due to the judgment Plaintiff received against Captus, and thereafter the Debtor, Plaintiff was a judgment creditor that was owed a fiduciary duty by the Debtor to preserve the assets of Captus once it became insolvent.

In order to evaluate whether or not the trust fund doctrine satisfies the fiduciary requirement in section 523(a)(4), the Court needs additional facts. The Court needs to know at what time Captus became insolvent; whether the Debtor knew that the Vehicle was stolen at the time of the sale; whether the Debtor knew that Captus was insolvent at the time of the March 2004 transfer; whether the March 2004 transfer was a payment of salary or a fraudulent transfer; and whether there were other officers or shareholders of Captus. In addition to the fraud or defalcation argument raised by Plaintiff, Plaintiff also asserts that Defendant's payment to himself in March 2004 was either embezzlement or larceny, or both. In order to reach a conclusion as to whether or not the March 2004 transfer was embezzlement or larceny, the Court needs to know more details about it.

Thus, the Court finds that there are material issues of fact with respect to Plaintiff's section 523(a)(4) cause of action, and denies both Plaintiff's motion for summary judgment and Defendant's motion for summary judgment.

3. <u>11 U.S.C. § 523(a)(6)</u>

Section 523(a)(6) of the Code provides:

> (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> . . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6) (2010).

Under section 523(a)(6), the creditor seeking to deny the dischargeability of a debt must establish (1) that the debtor acted in a willful manner when committing the injury to the creditor and (2) that it was done maliciously. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. N.Y. 2006); *In re Akhtar,* 368 B.R. at 127. "Willful" and "malicious" are not defined in the Code, and their definition falls to judicial interpretation. *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 454 (Bankr. S.D.N.Y. 2008); *In re Akhtar,* 368 B.R. at 127.

The willful injury requirement is satisfied when the injury complained of is "deliberate or intentional." *Kawaauhau v. Geiger (In re Geiger),* 523 U.S. 57, 61 (1998); *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 549 (Bankr. E.D.N.Y. 2009) ("Debts arising from negligent or reckless conduct are not within the ambit of § 523(a)(6)."); *In re Akhtar*, 368 B.R. at 127. In order for conduct to be considered "malicious," there must be a showing that the conduct was "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Ball v. A.O. Smith Corp.*, 451 F.3d at 69 (*quoting In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996)); *Novartis Corp. v. Luppino (In re Luppino),* 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)

(deducing malice where "the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor.").

In his Order, Judge Farnetti noted that there appeared to be fraud between the parties based upon the facts before him. However, the Order does not provide this Court with the information and facts necessary to make a finding that the Debtors actions were "willful" or "malicious", and thus the Court cannot apply collateral estoppel or res judicata.

In order to have a better understanding of whether Debtor's conduct satisfies the elements under section 523(a)(6), there are several other facts that the Court would need to know, among which is how Captus received the Vehicle; was this the only stolen vehicle sold to the public; did Captus have title to the Vehicle when it was sold to the Plaintiff or did Captus misrepresent that it had good title to sell the Vehicle; did the Defendant know or should he have known that the Vehicle was a stolen car; and what policies did Captus have in place for the sale of vehicles to the public. Thus, there are material issues of fact as to whether the debt will be discharged pursuant to section 523(a)(6) and the Plaintiff's motion for summary judgment and the Defendant's cross-motion for summary judgment are denied.

Case 8-09-08613-dte    Doc 19    Filed 09/27/10    Entered 09/27/10 13:07:27

## CONCLUSION:

Based upon the above reasoning and conclusions of law, Plaintiff's motion for summary judgment and Defendant's motion for summary judgment are denied in their entirety. A pre-trial conference in this adversary proceeding shall be held before the Court on October 21, 2010 at 2:00 p.m.

So ordered.

Dated: Central Islip, New York
September 27, 2010

*s/ Dorothy Eisenberg*
Honorable Dorothy Eisenberg